BORNE SCRYMSER Co. *v.* UNITED STATES (No. 3813)[1]

---

[1] T. D. 47465.

United States Court of Customs and Patent Appeals, January 7, 1935

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

[Oral argument December 11, 1934, by Mr. Sharretts and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported, at the port of New York, certain merchandise described on the invoice as "oil residue, mineral." The appraiser, in his answer to the protest, said that it "was, on a previous analysis of similar merchandise, found to consist chiefly of the alkali salts of sulphonated petroleum acids. It is similar to a soluble grease but contains no fatty oil." The merchandise was classified by the collector for duty under paragraph 56 of the Tariff Act of 1930. The appellant protested, claiming the merchandise to be free of duty under paragraph 1733, or, alternatively, as a not enumerated manufactured or unmanufactured article, under paragraph 1558, or, alternatively, as "waste, not specially provided for," under paragraph 1555 of said act.

The trial court, Brown, Judge, dissenting, overruled the protest without affirming the action of the collector, being of opinion that the protestant had not sustained the claims made by him in this protest. The importer has appealed.

The imported product, at a temperature of 72 degrees Fahrenheit, is a heavy, oily material, brown in color, and flows easily but slowly. The chemist's report, which appears in the record, states, so far as it is deemed material here:

The sample is a manufactured product obtained from petroleum by treatment with sulphuric acid and caustic soda and contains the sodium sulphonates of the unsaturated constituents of petroleum. * * *

The importer called two witnesses on the trial of the cause, and the Government called one. The testimony of these witnesses was directed to the process by which the imported merchandise was manufactured, and as to its uses and constituent elements. It fairly appears from the testimony of these witnesses, that in the distillation of crude petroleum by present methods, the distillation processes produce certain so-called fractions, as the distillation proceeds, as follows: Gasoline fraction, kerosene fraction, gas oil fraction, and

lubricating fraction. Other fractions are produced, but a further detailing of the same is not deemed important here. The imported product results from a further treatment of the lubricating fraction. It appears, from the record, that it is the practice to refine certain of these fractions, particularly the lubricating fraction, by the application of the usual refining agents, which are, successively, sulphuric acid, alkali, and water. When the lubricating fraction of the distillate is thus refined, as a result thereof two products are procured, a heavy lubricating oil and a thick, dark, tarry sludge. This heavy lubricating oil is again subjected to a sulphonating process as before, and as a result thereof two products are produced: First, a clear, white, odorless mineral oil, such as the product known as "Nujol"; second, the imported product. It is plainly shown by the testimony that the imported merchandise is not a useless product, but has a well-known commercial use in the textile industry and in making emulsions for use in many other industries. It is regularly procured and sold by the importer for those purposes.

The testimony further shows that the imported product is a mineral oil derived from crude petroleum, and that it contains the sodium sulphonates of the unsaturated constituents of petroleum. It is also shown by the testimony of the witness Kalichevsky, in an incorporated record in the matter of protests Nos. 365142–G et al., that the treatment which the imported material has received has not made any chemical change therein.

Said paragraphs 56 and 1733 are as follows:

PAR. 56. Hydrogenated or hardened oils and fats, 4 cents per pound; other oils and fats, the composition and properties of which have been changed by vulcanizing, oxidizing, chlorinating, nitrating, or any other chemical process, and not specially provided for, 20 per centum ad valorem.

PAR. 1733. Oils, mineral: Petroleum, crude, fuel, or refined, and all distillates obtained from petroleum, including kerosene, benzine, naphtha, gasoline, paraffin, and paraffin oil, not specially provided for.

It is not contended by the Government here, on oral argument, that the imported merchandise was properly classified under said paragraph 56, but rather that it should have been classified under the not enumerated manufactured article clause of said paragraph 1558. It appears, also, from the proceedings in the trial court that said paragraph 56 was not relied upon by the Government there, and that court, in the majority opinion, expressed doubt upon the question of its applicability.

It seems evident, from the text and context of said paragraph 56, that it was not intended to apply to mineral oil, a petroleum product such as that here involved. In considering paragraph 1633 of the Tariff Act of 1922, identical in language with said paragraph 1733,

we said in *Bisbee Linseed Co.* v. *United States,* 19 C. C. P. A. (Customs) 101, T. D. 45242:

The evidence produced upon the trial conclusively shows that the only known mineral oils are the mineral oils provided for in paragraph 1633 of said tariff act, to wit, petroleum and distillates obtained therefrom.

A very interesting and instructive discussion of the kind and character of oils intended to be included within the scope of said paragraph 56 was before the Congress at the time of enactment of the Tariff Act of 1930, in the Summary of Tariff Information, 1929, Vol. 1, pp. 287, 288.

For many years petroleum and certain of its products were admitted into the commerce of this country free of duty. In the Tariff Act of October 3, 1913, paragraph 561, the predecessor of the present paragraph 1733, this language appeared: "* * * all products obtained from petroleum." In the Summary of Tariff Information, 1921, p. 1404, prepared by the United States Tariff Commission for the use of the Congress in preparing the Tariff Act of 1922, in explaining suggested changes in said paragraph 561, the Commission stated:

*Important changes in classification.*—The phrase "and all products obtained from petroleum," paragraph 561, act of 1913, has been changed to read "and all distillates obtained from petroleum," so as not to include chemicals manufactured from petroleum. * * *

The language was changed, agreeably to this suggestion. Obviously, it was changed for the purposes set out by the Tariff Commission, to exclude chemical products, not the direct result of the distilling and refining of crude petroleum.

The record shows that all petroleum distillation fractions, except the gas oil fraction, are refined before they are ready for commercial use, usually by a sulphuric acid and alkali treatment. Successive refinements produce purer products of the same character. The language of the paragraph plainly includes highly refined gasoline or kerosene equally with those less refined. The paragraph does not delimit the extent of refinement. Likewise, when the lubricating fraction is refined, the limit to which it may be refined is not set by the law. Thus, the highly and many times refined gasoline or white mineral oil is included within the purview of the paragraph. *Schwabacher & Co.* v. *United States,* 22 C. C. P. A. (Customs) 496, T. D. 47484, decided concurrently herewith, Suit No. 3795. Does the statute intend that a highly refined white mineral oil may be admitted free of duty, and its co-product, a coarse, thick oil, as here imported, should be dutiable?

We cannot come to that conclusion. This imported product has not been changed to "chemicals manufactured from petroleums," named in the above-quoted excerpt from Summary of Tariff Information, 1921. It is a distillate obtained from petroleum and refined

petroleum. There are statements in the record that this merchandise is a by-product in the manufacture of mineral oil or "Nujol." It might be inferred, therefore, that this material is a waste. However, under the facts hereinbefore recited, it is no more a waste product than were the rabbit snips in *United States* v. *Hatters' Fur Exchange*, 1 Ct. Cust. Appls. 198, T. D. 31237, or the cotton linters in *United States* v. *Salomon*, 1 Ct. Cust. Appls. 246, T. D. 31277.

Furthermore, as stated by Judge Brown in his dissenting opinion:

There is nothing in the language of paragraph 1733 which excludes by-products therefrom. Many of the articles admittedly included in paragraph 1733 are by-products.

The judgment of the United States Customs Court is *reversed* and the cause is *remanded*, with directions to sustain the importer's protest, under said paragraph 1733.